## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES BARNES<br>205 W. Mulberry Avenue<br>Trenton, NJ 08629<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MITRA QSR KNE, LLC *d/b/a* KFC<br>600 E. Black Horse Pike<br>Pleasantville, NJ 08232<br><br>　　　　Defendant. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

James Barnes (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.　This action has been initiated by Plaintiff against Mitra QSR KNE, LLC *d/b/a* KFC (*hereinafter* "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), the New Jersey Law Against Discrimination ("NJ LAD"), and applicable New Jersey common law. Plaintiff asserts, *inter alia*, that he was discriminated against and unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5. Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8.  Mitra QSR KNE, LLC, upon information and belief, is a corporation that owns and operates several KFC fast-food franchises in Pennsylvania and New Jersey. Plaintiff was hired through and worked at one such New Jersey KFC franchise with an address as set forth in the above-caption.

9.  At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was employed with Defendant for approximately 1½ years, beginning in or about May of 2018. Plaintiff worked primarily as a cook (and laborer) at Defendant's KFC franchise located at 600 E. Black Horse Pike, Pleasantville, New Jersey.

12. At the time of his termination, Plaintiff was primarily supervised by General Manager, Bill (last name unknown, *hereinafter* "Bill") and Assistant Manager, Gail (last name unknown, *hereinafter* "Gail").

13. Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

14. On or about September 8, 2019, Plaintiff suffered a serious work-related injury wherein a box fell on his head/neck (resulting in cervical disc herniation) in the stock room, and he became unconscious and fell to the floor. When Plaintiff regained consciousness, his co-workers advised him not to get up, and Gail informed him that she had called an ambulance.

15. After sustaining his aforesaid work-related injuries, Plaintiff filed for worker's compensation benefits through Defendant.

16. Following his work-related injuries, Plaintiff suffered from migraines, back, neck, and head-related conditions, pain, and mobility limitations, which (at times) limited his ability to perform some daily life activities, including but not limited to lifting, bending, turning or twisting his head and neck, reaching, and working (among other daily life activities).

17. Despite his aforementioned health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

18. For example, after being transported by ambulance to the Atlantic City Medical Center immediately following his aforesaid work-related injuries, Plaintiff was evaluated by an emergency room physician, x-rayed, provided with a neck brace, and advised that he should remain out of work until he could be evaluated by Defendant's worker's compensation physicians.

19. Following his hospital visit (discussed *supra*), Plaintiff informed Defendant's management, including but not limited to Gail and Bill, of the status of his work-related injuries/serious health conditions and that he required reasonable medical accommodations in the form of a leave of absence to treat and care same.

20. Thereafter, Plaintiff commenced a medical leave of absence, during which he was evaluated by Defendant's worker's compensation physicians at the Rothman Institute, who ordered an MRI and referred Plaintiff to physical therapy for several weeks at the Atlantic City Medical Center.

21. During his medical leave of absence, Plaintiff spoke with Gail on at least one occasion, wherein he apprised her of the status of his work-related injuries/serious health conditions and confirmed his need for medical leave.

22. Following several weeks of physical therapy, Plaintiff was advised that he had reached maximum medical improvement by Defendant's worker's compensation physicians and could perform the essential functions of his job despite having lingering needs for medical follow-up. During this time, however, Plaintiff heard from a (former) co-worker that Plaintiff had been terminated from his employment with Defendant.

23. Plaintiff attempted to verify if he had been terminated (*see* Paragraph 22, *supra*), by calling Bill on or about December 4, 2019, who informed Plaintiff that he was not permitted to return to work at that time and there was no job for him.

24. When Plaintiff inquired as to the reason for his aforesaid termination, Bill replied on that Plaintiff "wasn't here" – a clear reference to Plaintiff's medical leave of absence to care for and treat his aforesaid work-related injuries/health conditions (a reasonable accommodation under the ADA).

25. Plaintiff was blindsided by his abrupt termination after utilizing only a short nearly 3-month medical leave to care for his aforesaid work-related injuries/health conditions, as he would have returned sooner (around 2 months) had Defendant engaged in the interactive process required under the ADA, reached out to Plaintiff and suggested that he needed to return earlier to keep his job, or required Plaintiff to seek an earlier clearance evaluation with the worker's compensation physician.

26. Additionally, between on or about September 8, 2019 until his termination (while Plaintiff had been taking a block medical leave of absence from work to care for and treat for his

aforesaid work-related injuries/health conditions), Defendant's management never informed Plaintiff of his individualized FMLA rights, as required by the FMLA. Therefore, Defendant failed to follow proper notice, designation, and informational regulations of the FMLA.

27. Prior to terminating Plaintiff's employment, Defendant failed to accommodate Plaintiff under the ADA by failing to (1) reinstate Plaintiff to the same or similar position he held prior to his medical leave or allow him to return to Defendant's Pleasantville, New Jersey franchise location (which is always hiring and considering job applicants due to ongoing workplace turnover); and/or (2) hold his position open during his short nearly 3-month medical leave (which Plaintiff would have shortened had Defendant suggested he return earlier to keep his job).

28. Plaintiff believes and therefore avers that he was terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; and/or (4) Defendant's failure to properly accommodate Plaintiff (set forth *supra*).

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities, including but not limited to, lifting, bending, turning or twisting his head and neck, reaching, and working (among other daily life activities).

31. Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

32. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable accommodations at times.

33. Plaintiff requested reasonable accommodations from Defendant, including but not limited to a short nearly 3-month medical leave (which Plaintiff would have shortened had Defendant suggested he return earlier to keep his job) for doctors' visits, physical therapy, and to care for his aforesaid health conditions.

34. Plaintiff was abruptly terminated from his employment with Defendant in close proximity to his requests for/utilization of reasonable accommodations, i.e. block medical leave.

35. Prior to terminating Plaintiff's employment, Defendant failed to (1) engage in the interactive process and/or accommodate Plaintiff under the ADA; (2) reinstate Plaintiff to the same or similar position he held prior to his medical leave or allow him to return to Defendant's Pleasantville, New Jersey franchise location (which is always hiring and considering job applicants due to ongoing workplace turnover); and/or (3) keep his position open during his short nearly 3-month medical leave (or suggest he return earlier to keep his job).

36. Plaintiff believes and therefore avers that he was terminated from his employment with Defendant because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations; and/or (4) Defendant's failure to properly accommodate him (discussed *supra*).

37. These actions aforesaid constitute violations of the ADA.

## COUNT II
### Violations of the New Jersey Law Against Discrimination (NJ LAD)
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute identical violations of the NJ LAD.

## COUNT III
### Violations of the Family and Medical Leave Act ("FMLA")
(Interference & Retaliation)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

42. Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

43. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

44. Defendant is engaged in an industry affecting commerce and employed at least fifty (50) or more employees within 75 miles of the location where Plaintiff worked for Defendant for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

45. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

46. Plaintiff's block medical leave between September 8, 2019 and his termination would have been considered FMLA-qualifying leave.

47. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) failing to inform Plaintiff of his individualized FMLA rights, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (4) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (5) by making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; (6) failing to designate Plaintiff's request for block time off for his health conditions from in or about September 9, 2019 until his termination as FMLA-qualifying or FMLA protected leave; and (7) by failing to reinstate Plaintiff to the same or similar position upon his return from FMLA leave.

48. These actions as aforesaid constitute violations of the FMLA.

## COUNT IV
### Common-Law Wrongful Discharge
### (Public Policy Violation)

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Upon information and belief, Plaintiff was terminated in substantial part for making a claim for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

51. It is against New Jersey's public policy for an employee to be terminated for making a worker's compensation claim and/or seeking worker's compensation benefits. These

9

actions as aforesaid constitute wrongful termination in New Jersey. *See Stewart v. County of Hudson*, Docket No. A-0477-09T3, 2011 N.J. Super. Unpub. LEXIS 1965, at *34 (N.J. Super. Ct. App. Div. July 22, 2011).

52. The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and his termination creates an inference that his termination was in retaliation for making such claims.

53. These actions as aforesaid constitute wrongful termination in New Jersey.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

```
```
F.    Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.    Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _/s/_

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 18, 2020